Good morning and may it please the Court. My name is Bill Burgess and I represent the appellant Kathleen Ah Quin. I will try to keep three minutes for rebuttal but we'll see how that goes. In New Hampshire v. Maine, the Supreme Court told us that judicial estoppel is an equitable doctrine invoked at a court's discretion and that it prohibits parties from, and I'm quoting, from deliberately changing positions according to the exigencies at the moment and that it should be resisted when a party's prior position was based on an indiscriminate decision. The Supreme Court, however, in many other cases that we cite, emphasized that equitable principles should not be contorted into inflexible rules. Now the decision below goes against all of this and turns a doctrine meant to protect the integrity of the courts and converts it into a free pass for defendants in discrimination cases. The primary error that the magistrate judge committed was its failure to exercise discretion or to analyze the facts of this particular case to determine whether judicial estoppel is appropriate. The magistrate judge's analysis applies equally to every litigant who has ever left their lawsuit off of a bankruptcy form and obtained a discharge. The magistrate judge's analysis, when it got to this case, began with a proposition that Ms. Oquin's lawsuit must be disclosed unless she could show either that she didn't know her lawsuit existed or that she didn't have a motive to conceal it. And then the magistrate judge said such failure bars Oquin from pursuing the claims in this case. Every litigant who is pursuing a lawsuit knows that it exists and as to whether she had a motive to conceal it, the magistrate judge didn't look at the facts of this case but courted Eastman and said that bankruptcy debtors who leave their lawsuits off of their bankruptcy disclosures always have a motive to conceal. I think he said an ever-present motive to conceal. That's not judicial estoppel. It's not equity. And the result is that a plaintiff with viable discrimination claims is automatically put entirely out of court. Now had the court done the proper analysis, it would have considered the facts of this case. It would have looked at the declarations that Ms. Oquin submitted, that her attorney submitted, that her bankruptcy attorney's assistant submitted, would have actually looked at the question on the form to see if someone could be reasonably confused about what that requires her to disclose. Counsel, I understand that you disagree with the court's findings about the facts, but you've said two or three times now that the court disregarded the facts of this case. And I don't read the record that way. Do you want to explain to me why you think the facts were disregarded? We went over in some detail her testimony before the Bankruptcy Court and whatnot. All right. I mean, from I think pages 1 to 9 of the record, you have the recitation of the facts and the legal standards. And then when the court actually turns to judicial estoppel, though, it starts off with this rule. On page 9, the judge says, you know, she left this form off of her – she left the claim off, and she said, such failure bars Ockwin from pursuing the claims in this case. As I read the analysis at page 9, the rule he's applying is that if you leave a lawsuit off of your bankruptcy disclosures and you obtain a discharge, and that's the first New Hampshire fact – the first two New Hampshire factors, inconsistent positions and acceptance of the position by means of a discharge. And what he's saying there is that she is estopped. That is the rule. And then he goes on to say she is estopped unless she can fit within this narrow inadvertence rule. And this is the rule that the county urged in their motion for summary judgment. If you look at the record at pages 60 to 61 and 66 to 71 is the county's summary judgment motion. That is the rule they're arguing for. And on the transcript, they say all that we need to show is that she knew she had a claim and she had a motive to conceal that claim. And that's at R16 on the transcript. That was the county's position. Right. Excuse me. That was the county's position. But, again, did you find some place where you had decided that that's what the court relied upon? Yes. At R10 and R11, that is the court analyzing this case and talking about Eastman. And he says, with respect to motive, the county finds that Uquin, like the debtor in Eastman, had motive to conceal the suit for the same reasons identified in Eastman. And then there's the block code in Eastman with the reference to the present motive to conceal. And that's pretty much it. I mean, I don't mean to So, I guess if I understand your argument, it is that the district court's definition of inadvertent or mistaken as a concept is too narrow. Yes. Because it incorporates only certain factors, those two factors that Eastman relies on. And that the correct legal standard is a broader view of what inadvertence or mistake actually means in common parlance. That's exactly right, Your Honor. And I think this might be a good time for me to respond to the case that the county cited in the 28-J letter last week. I think there are a few statements in our brief where we say, or we could at least be read as saying, that the court requires an outright finding of bad faith. And I think in the Monroe case, the court clarified that we may have said something like that in earlier cases, but our cases don't quite go that far. And they base that on the statement in New Hampshire v. Maine that judicial estoppel isn't susceptible to inflexible prerequisites and that sort of thing. And chicanery, the most recent case says, is a factor to be considered along with all the other factors. Right. And there's two points I want to make about that. First, they do say it is a factor to be considered. And going back to what New Hampshire v. Maine does say, it does say that judicial estoppel should be resisted when a party's prior position was based on inadvertence or mistake. And that's at 753. And it refers to judicial estoppel permitting parties from deliberately changing positions. So maybe if an outright finding of bad faith isn't required, I think what at a minimum is required and what wasn't done here is you have to look for some amount of deliberateness in the prior state. Counsel, on page 11 of the magistrate judge's order, he finds that Ockwin's failure to disclose was not inadvertent or mistaken. So there's the language straight out of the New Hampshire case, New Hampshire v. Maine. So what's wrong with that finding? I mean, we have a finding that says it was not inadvertent or mistaken. He's recited all of the facts and shown how she left it off, how she knew about the lawsuit at the time, unlike Hamilton, where we said all you had to do was just know of the potential existence of a lawsuit that hasn't yet been filed. Here the lawsuit had been filed and she left it off her form. She admitted that she was paying an attorney. And the magistrate judge says, well, it wasn't inadvertent or mistaken. So we've got the language right out of the Supreme Court case. So what's the problem? I think there are at least two questions there. I'm going to try to answer them as quickly as I can. There's probably more than two. The two that I discerned, I'll try to answer them. If I haven't fully responded, let me know. So when the court says that, you said to me, to R11, that Ockwin's failure to disclose wasn't the result of inadvertence or mistake, the discussion immediately preceding that is this narrow conception of inadvertence or mistake that comes from Eastman that Judge Graber and I were just discussing a minute ago. And that, I think, is the problem. It doesn't mean it wasn't inadvertent or mistaken in the sense that you and I would say if we weren't talking about judicial estoppel or bankruptcy. He means she knew she had a claim. And she, like every other person who's ever left a claim off a form, has an ever-present motive to conceal it. That's not inadvertence or mistake. And that's not a rule that this you need to know of the facts that could potentially give rise to it. Well, in Hamilton, we applied estoppel in a case in which the lawsuit had not yet been filed and in which she had an obligation to report that she had a potential lawsuit. Here, we've got a lawsuit that was just left off. Right. And the potential lawsuit in Hamilton, that's relevant to the issue. Hamilton is a much stronger rule than your client's case. It's a much more powerful rule, and it's adverse to you. That's my point. Okay. I disagree, and let me see if I can explain why. The potential lawsuit in Hamilton is relevant to the debtor's duty to disclose it in the first place. That's the inconsistent position in the first place. The Bankruptcy Code says that you have a duty to disclose not just lawsuits that you're actively pursuing, but lawsuits that you know you could potentially pursue. And so we agree Ms. Zuckwin had a duty to disclose her lawsuit. Hamilton said Hamilton had a duty to disclose his potential claim, even if he hadn't yet initiated the claim. On this much we agree, and I don't think that's a problem for us. Hamilton was a case of just outright fraud, and this guy was actually concealing his claim from the insurers. And what Hamilton did was reject the argument that if a debtor goes back to the Bankruptcy Court, obtains a reopening, and obtains a new discharge, that that has per se negated the inconsistent position. That's what Hamilton's about, and that's not what we're arguing here. I don't think Hamilton applies any sort of a strict rule in this context, and it certainly doesn't depart from New Hampshire's statement that judicial estoppel should be resisted when a party's prior position was based on inadvertence or mistake. Counsel, let me add, I want to know something about the sequencing here of the offense. Once you disclosed to opposing counsel and to the district court that she had this claim, then the county came in and told you that they intended to move for dismissal on the grounds of judicial estoppel. Yes. Filed that claim. In the meantime, you went to the district court, I'm sorry, to the Bankruptcy Court, and tried to reopen, or at least went to the Bankruptcy Court. Yes. And tried to reopen and reopen the matter. Then in February, that was all in January. In February, as I recall, but didn't they did this? February was when the county filed its motion. I can give you the exact timeline if that would help, or I can just actually wait for a question. So I'm trying to figure out whether the Bankruptcy Court, the Bankruptcy Court ultimately dismisses this. The trustee says, I don't have any interest in this lawsuit. Yes. Okay. Was that because the district court had already acted and had issued the judicial estoppel? If that's the case, then the trustee has, there's nothing for the trustee to hang on to, right? Because the lawsuit's been dismissed. Right. There's no record, one way or another, as to what the trustee's reasons were. Okay. We don't know, but am I correct on the sequencing? That is, by the time the trustee says, I no longer have any interest in pursuing this lawsuit, at that point, the magistrate judge had already dismissed her suit on grounds of judicial estoppel. I think that's right. Let me consult my notes. That is right. The district court granted summary judgment, in this case, on April 1st. Yes, that's exactly right. And in June, the bankruptcy trustee issued the amended discharge. So what was existing was that at the time of the district court's ruling, in this case, the amended schedules did show this lawsuit. Yes. But it hadn't yet gone through the bankruptcy. Yes, when the she had reopened her bankruptcy, then the district court granted the county summary of judgment motion, then the trustee gave the claim. If you prevail today, yes, does she have an obligation to go back to the bankruptcy court and back to the trustee and say, hey, wait a minute, I just wanted to let you know my lawsuit is back up and running? Since the trustee made the decision at the time when the lawsuit had been dismissed, it's a pretty logical decision. It's an easy decision by the trustee to say, well, I have an interest in a lawsuit that's been dismissed. But if the lawsuit is revived, does she have an obligation to go back to the trustee in the bankruptcy court and reopen this? If not, she's gotten away with the whole thing. She's now been discharged in bankruptcy, and she's still got her lawsuit without having to disclose it as an asset. So two answers to that. I don't believe she has an obligation to. It would certainly be a reasonable thing to do, and it would certainly fit within our argument about the duty to consider lesser sanctions. It would be a perfectly reasonable thing to do if, instead of putting her completely out of court for these claims, which I think we stated several times in the brief, but I'll remind you again, the district court found were viable enough to survive summary judgment. If she ultimately prevails in the lawsuit, a lesser sanction could be requiring her to go back to the creditors and say, I've won, you know, do you want to reopen the bankruptcy and take a look at this? Or if we prevail today, then the district court could be... From a sanction, it's what the creditors would be entitled to. If the creditors had been different. If it had been different, yes. Counsel, I'm pretty mystified by your statement that you don't think she would have the obligation to go back. Your premise is that this is an equitable doctrine. Yes. Why wouldn't she have the obligation to go back, in response to Judge Vibey's question? I think she should go back. I'm not sure. My understanding is that when... I want to be sure I answer this carefully. When the bankruptcy trustee abandoned the claims and gave her a new discharge, the bankruptcy trustee was aware of the status of the case, aware that it was going up on appeal, aware that there was some possibility she'd prevail, and abandoned the claims and dismissed the lawsuit. I think what that means, and this is a... This is probably where my knowledge of bankruptcy law might stop. I think what that means is that the trustee was aware of its rights and made a decision that I don't want it, regardless of whether you lose on appeal or whether you win on appeal. We don't really know that. If this had all gone as it should have from the trustee could have assessed the merits of the claim and decided whether it was or was not in the interests of the creditors to retain this asset for the bankruptcy estate or not. So I'm not sure... I'm not sure we know whether we could make her go back to bankruptcy court or we couldn't, but... We're certainly not fighting that at all and be happy to go back to bankruptcy court if we prevail on appeal. I... We sidetracked you because you said you had a second answer to Judge Bybee. I'm trying to remember what the second aspect of the question was. I've honestly forgotten. It's okay, I've forgotten the question. Yeah, it's gone, I'm sorry. I think to go back to the point I was making earlier, even if you don't require an app... Right, well, I guess at this point I should probably just say that now is my time for rebuttal. You may do that. Thank you, Your Honor. Good morning, Your Honor. My name is Barbara Petras and I represent the County of Kauai Transportation Agency, the defendant and appellee in this matter. I would submit to the court that a review of the district court's order shows that not only was the correct standard applied, but that the court did consider all facts that were before it in determining that the balance of equities required that judicial stop will be applied in this matter. But it was your position, and it appears to me from a complete reading of the district court, that the court was buying into your argument that the only two things that were relevant were the debtor's knowledge of the claim and the fact that a debtor in this situation essentially always has an important motive to conceal it so that they can retain all the financial benefits that may accrue from this lawsuit. And that seemed to me to be what the district court was referring to by not inadvertent or mistaken, that the court was agreeing with your construct, that that's all that's relevant. And I guess I find that, just speaking for myself, a rather narrow view of how equitable estoppel should apply in this situation. Well, and, Your Honor, I would, one, if I recall the argument to the court, our position was that the court should follow the standards enunciated in New Hampshire. But to the extent the court felt that it needed to address the issue of inadvertence that was raised by Ms. O'Quinn, that that would be the standard that should be applied. What would be the standard that should be applied? In terms of the definition of inadvertence. That the Tenth Circuit was not. The Tenth Circuit standard. And there are other circuits with much broader interpretations, such as the Seventh. There are other circuits with a much broader interpretation. That's correct. And I think that sort of the overarching thing that I find troubling in this case is that the only party that, now, for purposes of the procedural posture of this case, assuming that her underlying claim is valid, the only party that really obtains an advantage here is a wrongdoer, or an alleged wrongdoer. Someone who has engaged in unlawful discrimination. Who's not a party to the bankruptcy. The bankruptcy laws are not designed to help with that. And it just seems like a very peculiar way to apply the doctrine so that the parties who ultimately are harmed are the person who has been wronged. And they're creditors who also have had no part in any wrongdoing. So why is this equitable? I would submit, Your Honor, that the focus should not be on the defendant, but should be on the judicial process. And that really is the gist of New Hampshire. That the integrity of the judicial process is what's paramount and what dictates the application of judicial estoppel. Okay. Well, what was the bankruptcy court ultimately was given the correct information. So the bankruptcy court wasn't fooled. She obtained no particular advantage in the bankruptcy proceeding herself. Well, she did initially until she was caught. And that's where the difficulty is in terms of the bankruptcy context and the failure to disclose this type of asset in the bankruptcy proceeding. Because the bankruptcy process relies upon the complete, the honest, the accurate disclosure of assets by the debtors. And in this instance, she didn't do that. And it's undisputed that she failed to disclose either on her financial statement of affairs, either on her Schedule B, or in any other manner to the bankruptcy court initially until she got caught. Counsel, you've said that several times. In your briefing, you stressed several times that she got caught. And you've now made that statement a couple times here in oral argument. But this case is different than Hamilton, where the debtor didn't seek to reopen. In this case, the debtors or plaintiff, depending on which suit you're talking about, her lawyer discloses in the Solomon Conference and then moved to reopen, correct? Only moved to reopen two weeks after we had informed the court and counsel that we were going to seek to dismiss her claim on the basis of judicial establishment. But in terms of the disclosure, you're looking at the second step. The first step was the disclosure of the existence of this bankruptcy action. And my understanding, please correct me if I'm wrong, is that her lawyer disclosed that in the Solomon Conference. And then the city threatened to seek summary judgment. Her lawyer did disclose it. Her lawyer did also indicate that she did not understand the import of the fact that she had filed for bankruptcy. And Ms. Alquin also, in her declaration, indicated that she was terribly upset and embarrassed by the fact that her lawyer had disclosed it to us. She was upset. Well, nevertheless, this came from her team disclosing this in the Solomon Conference or not. I'm asking you to correct me if you think I've got the record wrong. But you've made this representation several times. And because this is an equitable doctrine and because you're focusing on whether or not the court was hoodwinked, I really think it's an important fact. So please clarify to me if I'm incorrect. Your Honor, it is accurate that her Title VII lawyer did disclose it to us. She indicated that she felt that her obligations of candor to the court and to counsel required her to do so. And she did so notwithstanding the fact that it upset her client. And that is correct. But at no time was there an indication until after we informed counsel that we were going to move to have the case dismissed on the basis of judicial estoppel. At no time was there any attempt to reopen until two weeks after that fact. So is your answer to Judge Graber's question about why, given that this is an equitable doctrine and the creditors are the ones who may be left holding the bag if the employment suit actually proves to be fruitful one day, is your answer that we ought not focus on that factor and instead focus on whether the integrity of the process has been tarnished? Yes. I would suggest that the focus should be on the integrity of the process as opposed to the benefit to the defendant. One of the challenges, as I understand, with the bankruptcy process is the fact that individuals, that the court and the process relies upon the individual debtors fully, completely, accurately disclosing their assets. And if the debtor is able to avoid that and conceal an asset, be it a piece of artwork, be it a claim that it had, or any other asset, unless they're caught, and I do believe she was caught, perhaps in part caught by her team. Well, I'm wondering how this would work in a different kind of context of inadvertence or mistake. And so I'm still focused, I guess, on the definition that's appropriate to consider for that exception or that application of the New Hampshire case. Let's suppose that the thing that's failed to be disclosed is an artwork, is, let's say, a painting. And let's say that the facts show that the painting has been stored in grandmother's garage and the person actually just didn't remember that they even had it until, the timing would be the same as in our case, except the person, you know, goes to visit grandmother who says, when are you taking your painting? And they go, oh, my goodness, I forgot all about the painting. But they actually knew in the most literal sense that they owned the painting. Is that an application that would permit judicial estoppel to be applied or not applied? Would it have to be? Because literally they would have had to know that they had title to that painting and they had an obvious motive to keep that valuable painting away from creditors. So what is the test for inadvertence? I believe that it would apply, Your Honor, because the duty to disclose on the debtor is so strong that the debtor has the obligation to take whatever steps are necessary to ensure that they disclose assets that should be disclosed. So in my hypothetical, if the person comes back from grandma's house and goes directly to the bankruptcy court and says, I need to amend my schedules because I just realized I have this valuable painting, and that's just too bad. And the other question I would have, Your Honor, is where the inconsistent statements in the judicial process would have taken place. So, for example, in that instance, it's unclear to me as to where the inconsistent statements would have occurred. Well, it's the same inconsistency because if it's not listed on the bankruptcy schedule, that's an omission, that's, you know, incorrect. And you're saying, well, is there a follow-on lawsuit involving somebody else? And that's where the inconsistent statement happens. So, for example, if the garage burned down and the individual then filed a claim under their insurance for that artwork and there was a dispute over the insurance payment, then that would be a different issue than the inconsistent statement. And so you're saying even if they've gone back and amended the bankruptcy schedule and to follow on the hypothetical, everybody's just out of luck, the creditors are going to be out of luck. I think it depends on the timing, Your Honor. And in that instance, if it were before a claim were filed, before there was knowledge of a claim, then I think that it could very well be the case that a court looking at those facts might not apply judicial estoppel. If it's after the claim has been made and prosecuted, I think the other result would well lie. I don't know if that helps to clarify, Your Honor. Well, I guess I'm just exploring how narrow your view is of inadvertence or mistake, and it's pretty strict, I would say. Well, I think there are some instances where inadvertence or mistake could be found. I think if I recall, instances where the debtor attempts to disclose the asset but does it badly or the wrong way, in that instance, that would be an inadvertence. Where there are typographical errors and those types of things, it would be an inadvertence. Let me follow that up with a question because the disclosure was made that Ms. Ockwin was paying her Title VII lawyer. That was on the original schedule, and so one could sort of tease that out and say, well, wait a minute, what was this for, based on what was disclosed? So does that count as a partial disclosure? I would actually disagree that she disclosed that her lawyer was being paid because if you look at the initial petition and the statement made, one, it doesn't refer to Ms. Carpenter Suey, whose name is spelled wrong, whose zip code is wrong. It doesn't refer to her as a lawyer. It doesn't indicate she's a peasant buyer. Well, you were just the one who raised the idea that if you put something in, but you kind of messed it up because you have typographical errors and so on and so forth, that's different because that might be an inadvertence, and so I'm pursuing that. Well, I don't think that she disclosed that she had a claim or enough information to attempt to disclose that she had a claim. And, in fact, the declarations that are submitted as part of the record, both from Ms. Ockwin as well as Ms. Flynn, who is an employee of Ms. Ockwin's bankruptcy attorney, indicate that she never disclosed to her bankruptcy attorney that there was any lawsuit. And if you look at that schedule, what it indicates is that Ms. Carpenter Suey, that the debt that was owed to her was for consultation fees. It doesn't say legal fees. It doesn't say attorney's fees. It says consultation fees. So, if anything, actually there may be an inference that that was an attempt to conceal as opposed to enlighten the bankruptcy court related to the existence of the lawsuit. In addition to that, and I do think that it's very significant, is the testimony that occurred at the meeting of the creditors because in that instance there was specific discussion about the existence of a potential claim, a legal claim. Relating to her husband's lawsuit. And relating to her husband's. And she was asked, you know, there's a claim, and I apologize for paraphrasing, but you're going to have to disclose. She said, no, that's not my claim, it's my husband's. Okay, then you don't have to disclose. But at no point in that meeting of the creditors does she say, I have a claim. She wasn't asked that question, though. I mean, I've read that colloquy several times, and it seems to me quite clear that the whole focus of it was her husband, her husband, her husband. Why are you filing the bankruptcy? My husband lost his job because there was a problem at the workplace and it wasn't his fault. You know, does he have a claim because of this? It's all about him. I'm not sure, you know, maybe somebody more sophisticated would have thought, oh, well, if I have to tell about him, maybe I have to tell about me. But she wasn't asked. Well, I don't think that the obligation is to ask the pointed questions as to do you have a lawsuit, especially when she was asked whether she had reviewed the statements that had been submitted. Well, why did you bring up this colloquy, then, if you didn't think it had a bearing? Because I believe that once the issue came up, that was an additional factor. Excuse me, Your Honor. Once the issue of a claim, albeit her husband's, but the fact that a claim might need to be disclosed in the bankruptcy proceeding, that at that point in time, in addition to the obligation she already had, her continuing obligation to disclose came into play, and she should have disclosed it either that day at the meeting or shortly subsequent to that. Thank you, counsel. Thank you, Your Honor. We appreciate your argument. You have a little bit of rebuttal time remaining. I think just two quick points, if time allows. The upset point, that's at R309 of the record, and the reason Ms. Equin says she's upset at that point is because her lawyer disclosed, her lawyer told opposing counsel about the bankruptcy as soon as she knew that there was any obligation, before she even spoke with Ms. Equin. And so if there's any mistake, it was revealing this to opposing counsel before we'd even figured out what to do about it. The second point, oh. Go ahead. Finish your point. We don't dispute that the obligation to disclose your assets fully in bankruptcy is important, and that's why Congress has armed bankruptcy courts to the teeth with measures to punish litigants if they get even a whiff of wrongdoing. The trustee, the creditors, and the bankruptcy court have sanctioning powers, and if they think that there's been any actual concealment, they can refer you for fines and imprisonment. And I'm sorry, I didn't have a full answer to your question earlier, but we are happy to go back to the bankruptcy court if we prevail on the government. Thank you, counsel. Well, the case just argued is submitted, and we appreciate the arguments of both counsel. It's also a very interesting case.
judges: Graber, Bybee, Christen